UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

                    Petitioner,

v.                                        CASE NO. 8:11-mc-99-T-27MAP

PAUL R. ST. JOHN,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

On December 2, 2011, the district judge granted the government's petition to enforce two Internal Revenue Service summons and specifically warned the Respondent that "[s]hould Respondent fail to comply with this Order, he will be subject to sanctions, including but not limited to a citation for contempt of court for failure to comply with a court order." *See* doc. 11. When the Respondent failed to produce any records and refused to answer most of the revenue officer's questions on Fifth Amendment grounds, the government filed the instant motion (doc. 14) asking the Court to find the Respondent in contempt for violating its December 2 order. After a hearing on the matter, and pursuant to the provisions of 28 U.S.C. § 636(e)(6)(B)(iii), the undersigned certifies the following facts to the district judge and recommends the issuance of an order requiring the Respondent to appear before the district judge on a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified.

*A. Certified Facts*

In April 2011, the IRS issued two summons directing the Respondent to appear on May 5, 2011, before Revenue Officer Bonnie Ragghianti to give testimony and provide records. The first one dealt with the IRS's collection efforts into the Respondent's income tax liability for the years 1997, 1998, 1999, 2000, 2002, 2003, 2004, 2005, and 2006. And it directed Respondent to give testimony and provide records pertaining to his financial accounts and interests for the period from October 1, 2010, through the date of compliance with the summons to assist in that collection effort.[1] The second one sought to aid in the IRS's determination of his tax liability for the years 2008, 2009, and 2010. The Respondent appeared as directed but failed to comply with either summons; in short, he refused to produce the requested records and refused to answer on Fifth Amendment grounds the majority of the questions Revenue Officer Ragghianti posed. As a result, the government filed a petition to enforce the summonses (doc. 1). *See* 26 U.S.C. §§ 7402(b) and 7604(a).

On September 27, 2011, I issued an order directing Respondent to appear before me on November 17, 2011, and show cause why he should not be compelled to comply with the summonses (doc. 2). My order also specifically directed the Respondent file with the clerk any opposition or defenses to the petition in advance of the hearing. *Id.* at ¶ 5. And it stated that "only those issues brought into controversy by the responsive pleadings and factual allegations supported by the affidavit will be considered." *Id.* at ¶ 6. That prompted the

---

[1] The testimonial part of the administrative proceeding was centered around the Respondent answering the questions posed by IRS Form 433-A.

Respondent, acting *pro se*, to file an incoherent response stating "all statutory regulations apply only to public servants and employees and I am not in receipt, nor seen any evidence I am a public servant" (doc. 4) and as the "user of the legal entity, commonly known and described as PAUL RAYMOND ST JOHN ... and understand I am to surrender the usufruct to the United States of America" (doc. 5).[2]

At the November 17 show cause, the Respondent did not invoke the Fifth Amendment in his response. Nor did he deny that he possessed the documents sought by the summonses or claim an inability to comply. Instead, he refused to identify himself as "Paul R. St. John" and took the same position in his pre-hearing filing – he asked the Court if he could "surrender the usufruct."[3]

Given the government's proof and the Respondent's meritless objections, I reported to the district judge that the government had met the *Powell* standards and recommended he grant the petition and enforce the summons (doc. 9).[4] The district judge adopted my report

---

[2] In addition, Respondent later filed a letter, affidavit, and verification (doc. 6) as well as a notice (doc. 7) essentially asserting the same incoherent arguments.

[3] The Respondent included a copy of the transcript in his response filed at doc. 16.

[4] To obtain judicial enforcement of an Internal Revenue Service summons, the government must meet the *Powell* standards: (1) the IRS investigation is being conducted for a legitimate purpose; (2) the inquiry may be relevant to the purpose; (3) the information sought is not already within the Commissioner's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *United States v. Medlin,* 986 F.2d 463, 466 (11th Cir. 1992). As it did here, the government satisfies this minimal burden simply by presenting a sworn affidavit of the agent who issued the summons attesting to these facts. *Medlin,* 986 F.2d at 466. Once the IRS made this showing, the burden shifted to the Respondent to disprove at least one of *Powell's* four elements. *Id.* Alternatively, he could have convinced the Court

3

and recommendation and issued the December 2, 2011, order enforcing the summons (doc. 11). Importantly, that order warned the Respondent that "[s]hould Respondent fail to comply with this Order, he will be subject to sanctions, including but not limited to a citation for contempt of court for failure to comply with a court order." *See* doc. 11 at ¶ 4.

On January 25, 2012, the Respondent, accompanied by a witness, appeared before Revenue Officer Ragghianti. Like before, the Respondent presented no records as the summonses demanded, and he refused to answer almost all the questions prompted by the Form 433-A. Namely, he invoked his Fifth Amendment privilege to questions about his phone number, business phone number, marital status, dependents, driver's license number, employer, occupation, income (personal or business), assets, credit cards, bank accounts, personal assets, and expenditures.[5] Given that conduct, the government moved for an order directing the Respondent to show cause why he should not be held in contempt and appropriately sanctioned to compel compliance (doc. 14). Accordingly, I issued an order directing the Respondent to appear before me on May 21, 2012, to show cause why he should not be held in contempt for violating the district judge's December 2, 2011, order enforcing the summonses. *See* doc. 16.

---

that the judicial enforcement would constitute an abuse of the court's process. *Id.* In any event, the Respondent's burden would have been heavy one, requiring allegations of specific facts and the introduction of evidence. *United States v. Leventhal,* 961 F.2d 936, 940 (11th Cir. 1992).

[5] The sources for my findings are the transcript of the IRS hearing on January 25, 2012 (attached by the Respondent at doc. 16), Officer Ragghianti's January 26, 2012, affidavit (doc. 14-1), and her testimony before me at the October 9, 2012, show cause hearing.

Although my order scheduling the show cause hearing did not invite a written response, the Respondent in advance of the hearing filed a pleading arguing he had appropriately raised his Fifth Amendment privilege at the January 25, 2012, administrative hearing and had not waived that defense.  He contended that a contempt sanction "would be premature as the Court did not make a finding in its Order [presumably, the Court's December 2, 2011, order] that respondent could not validly employ a Fifth Amendment defense in response to the summons, or the Court's order."  *See* doc. 18 at p. 10.  The Respondent urged the Court to conduct an *Argomaniz* inquiry and consider the merits of his Fifth Amendment assertions.[6]  This was the first time the Respondent asserted a Fifth Amendment claim in a pleading since the government petitioned to enforce the summonses more than a year ago.

At the show cause hearing, the Respondent appeared with counsel (I had continued the earlier scheduled date to accommodate the Respondent and his counsel).  The assistant United States attorney, at the outset of the proceedings, stated that the Respondent was not the subject of a criminal investigation and that the civil side of the IRS would not be

---

[6]  *United States v. Argomaniz,* 925 F.2d 1349, 1353 (11th Cir. 1991), involved a taxpayer's Fifth Amendment claim in response to an IRS investigative request.  *Id.* at 1353. If the reasonableness of the claim is not evident from the implications of the question, the court must make a "particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded." *Argomaniz,* 925 F.2d at 1355 (citing *United States v. Melchor Moreno,* 536 F.2d 1042, 1049 (5th Cir. 1976)).  The claimant must demonstrate his answer "would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime" like tax evasion. *Hoffman v. United States,* 341 U.S. 479, 486 (1951).  But the claimant must have a "reasonable cause to apprehend danger from a direct answer."  *Id.*

referring the Respondent for a criminal prosecution.  Officer Ragghianti then testified that the Respondent failed to comply with the summonses and asserted his Fifth Amendment privilege to almost all of her questions.  She also confirmed that she had no intention of referring the matter for criminal prosecution.  The Respondent declined to testify; instead, his counsel argued that the Respondent had validly exercised his self-incrimination privilege.

### B.  Discussion

#### 1.  the legal framework

The Secretary of the Treasury has the authority to issue administrative summonses "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability[.]" 26 U.S.C. § 7602(a).[7]  In furtherance of this purpose, the IRS may summon any person having possession, custody, or care of records or other documents relating to the tax liability of the taxpayer being investigated. *Id.*  The district courts of the United States have the authority to enforce summonses issued by the IRS.  *See* 26 U.S.C. §§ 7402(b), 7604.  Whenever any person summoned under the applicable provisions neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the government may apply

---

[7]  The Secretary delegated the authority to issue third-party summonses to the IRS, which, in turn, re-delegated that authority to its agents. *Anderson v. United States*, 236 Fed. App'x 491, 496 (11th Cir. 2007); *see La Mura v. United States*, 765 F.2d 974, 978-79 (11th Cir. 1985); *see also* 26 U.S.C. §§ 7602, 7609, 7801; *see also* 26 C.F.R. § 301.7701-9.

to a district court judge for an attachment against the taxpayer as for a contempt.  26 U.S.C. § 7604.  If after hearing the application the judge finds the government presented satisfactory proof, the judge has the duty to issue an attachment, directed to the proper officer, for the arrest of such person, and upon his being brought before the judge to proceed to a hearing of the case.  *Id.*  Upon such hearing, the judge shall have the power to enter an order he or she deems proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons as well as to punish the taxpayer for his default or disobedience.  *Id.*  The penalties for failure to comply with the summons include a fine of not more than $1,000 or imprisonment not more than 1 year, or both, together with costs of prosecution.  26 U.S.C. §§ 7604(c)(2), 7210.

In this instance, the government requests the Court hold Respondent in civil contempt for violating the Court's December 2, 2011, Order.  *See* doc. 11.  Specifically, the government seeks the Respondent's incarceration to compel his compliance with the Court's Order and the IRS summons.  *See* doc. 14 at p. 5.  "Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).  "[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991).  The underlying concern giving rise to this contempt power is not merely the disruption of court proceedings, but, rather, the

disobedience to orders of the Judiciary.  *Chambers*, 501 U.S. at 44 (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987)).  Notwithstanding the court's inherent power, 18 U.S.C. § 401 provides that a court of the United States has the power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority as "[m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice" or "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."  18 U.S.C. § 401(1) & (3).

A party seeking civil contempt must establish by clear and convincing evidence that the purported contemnor violated the court's prior order.  *United States v. Roberts*, 858 F.2d 698, 700 (11th Cir. 1988).  Once the party seeking contempt makes this *prima facie* showing, the burden shifts to the alleged contemnor to produce detailed evidence specifically explaining why he cannot comply, which requires more than a mere assertion of inability to comply.  *Id.* at 701.  Instead, the alleged contemnor must show he has, in good faith, made all reasonable efforts to comply with the order.  *Id.*  If the alleged contemnor makes a sufficient showing, the burden then shifts back to the party seeking to show contempt to prove ability of the alleged contemnor to comply with the court's prior order.  *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992).

### 2. *violation of the Court's order*

The government has shown clearly and convincingly that the Respondent violated the Court's December 2, 2011, order.  With the burden shifting to the Respondent, the

Respondent introduced no evidence to explain why he could not comply; nor did he demonstrate that he acted in good faith or reasonably tried to comply with the Court's order. *Roberts, supra.* The only justification offered is his Fifth Amendment claims. I find that excuse wholly insufficient as it comes far too late in the proceedings; the Respondent should have raised the privilege at the enforcement stage of the proceedings. *United States v. Rylander*, 460 U.S. 752, 756 (1983). And his failure to object to my report and recommendation on the enforcement order waived the issue. 28 U.S.C. § 636(b)(1)(B); *United States v. Schultz*, 565 F.3d 1353, 1360-61 (11th Cir. 2009) citing *Nettles v. Wainwright*, 677 F.2d 404, 409-10 (5th Cir. Unit B 1982).

The relevant facts here mirror those in *Rylander* – a taxpayer waiting until the contempt proceeding to raise his Fifth Amendment claim. The Ninth Circuit did not find such a strategy fatal; if the taxpayer validly asserted the privilege, he satisfied his burden of production for the summons. The Supreme Court disagreed, finding that view distorted the relationship between the enforcement proceeding and the contempt proceeding:

> 'It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience.'

*Id.* at 460 U.S. 756, 767, quoting *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948). Faced with an order enforcing the summons, Rylander's options narrowed considerably. Asserting the Fifth Amendment at the contempt stage was "not a substitute for [presenting] relevant

evidence" as to whether he had met his burden for producing the requested material. *Id.* at 761.

I read *Rylander* to say that a taxpayer at the contempt stage does not get a second chance to argue what he could have raised at the earlier enforcement stage but did not. Otherwise, the order enforcing the summons is meaningless. *United States v. Kowalik*, 809 F. Supp. 1571, 1580 (S.D. Fla. 1992) (Marcus, J.) (*aff'd*, 12 F.3d 1218 (11th Cir. 1993)) ("Any other reading would tend to towards nullifying the previous order of enforcement and viewing the compliance meeting as a mere sham…"). The facts in *Kowalik* are not materially different from here, and the result should be the same – a finding of contempt. To now conduct an *Argomaniz* inquiry, which is the approach the Respondent advocates, would lead to the absurd process *Kowalik* criticized:

> [A] respondent who was faced with an order to comply with an IRS summons would need merely to show up at the compliance meeting and baldly decline to answer or produce; at the contempt hearing, the merits of the defenses would be confronted, e.g., a blanket assertion of the Fifth Amendment privilege for the first time; the Court would then have to give the respondent a third opportunity to properly raise the privilege in a manner prescribed unambiguously by *Argomaniz*.

*Id.*[8]

---

[8] The Fourth and Ninth Circuits permit taxpayers to assert the privilege at contempt stage even though they failed to raise it at the enforcement stage. *See United States v. Sharp*, 920 F.2d 1167 (4th Cir. 1990); *United States v. Drollinger*, 80 F.3d 389 (9th Cir. 1996). But when carefully examined, those decisions are not persuasive, are at odds with *Reylander's* teachings, and counter the Federal Magistrate Act's scheme as interpreted by the Eleventh Circuit. In *Sharp*, the government argued Sharp should have raised the privilege claim at the enforcement stage and when he failed to do so *res judicata* principles precluded his asserting the claim at the contempt proceeding. *Sharp*, 920 F.2d at 1170. The Fourth Circuit remarked that "[s]uch a failure [to timely raise the privilege claim] may in appropriate cases

The Respondent has had multiple chances to timely raise and justify his Fifth Amendment claim: in advance of the enforcement hearing as directed by the show cause order; at the enforcement show cause hearing; in objections to my report and recommendation; or in a motion for reconsideration of the district judge's order enforcing the summons (the very order that is at issue). Instead, the Respondent either asserted his nonsensical "usufruct" arguments or remained silent, at least until the threat of contempt no longer seemed just a threat. Now, to avoid contempt, he resurrects the same claims he made more 16 months ago at his first administrative hearing. And he wants more hearings to resolve the matter. *Rylander* criticizes this circular approach. 460 U.S. at 762 ("Given the oft-stated reliance of the federal income tax system on self-assessment, a plainer guide to the

---

operate to preclude later assertions of the privilege, *see, e.g. United States v. Rylander*, 460 U.S. 752 (1983)." *Id.* Nonetheless, because Sharp was unrepresented at the enforcement proceeding, the court sidestepped *Rylander* and, without any legal support, said *res judicata* should not apply to deny a fundamental constitutional right. *Id.* In *Drollinger* the taxpayer failed to appear at the show-cause enforcement proceeding. The court reached the same result as *Sharp*, but it cited the Eleventh Circuit's decision in *Argomaniz* for support. 80 F.3d at 393. *Argomaniz*, however, does not stand for this no-waiver rule, and is factually and materially distinguishable from this case. The taxpayer in *Argomaniz*, unlike the Respondent, raised the privilege at the enforcement proceeding, and the magistrate judge instructed the taxpayer he would have to assert the privilege on a question-by-question basis when he presented himself again to answer the summons, which he did. The government renewed the motion to enforce, the court granted it, and taxpayer appealed. With this scenario, the Eleventh Circuit reversed and remanded the matter requiring the district court conduct an *in camera*, *ex parte* inquiry into the merits of each assertion of the privilege. *Argomaniz*, 925 F.2d at 1351-52. Lastly, the Eleventh Circuit, in implementing the Federal Magistrate Judge Act, requires a party wishing to preserve its objection to clearly advise the district court and pinpoint the specific findings that the party disagrees with. *United States v. Schultz*, 565 F.3d 1353, 1360-61 (11th Cir. 2009) citing *Nettles v. Wainwright*, 677 F.2d 404, 409-10 (5th Cir. Unit B 1982). By not objecting to my report recommending enforcement, the Respondent waived his objections to the enforcement of the summonses.

successful frustration of this system could hardly be imagined.").  And *Rylander's* closing

rebuke bears repeating:

> 'A subpoena has never been treated as an invitation to a game of hare and the hounds, in which the witness must testify only if cornered at the end of the chase.  If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity.'

*Id.* quoting *United States v. Bryan,* 339 U.S. 323, 331 (1950).

C.  *Conclusion*

For all the above reasons, I recommend the issuance of an order requiring the

Respondent to appear before the district judge on a day certain to show cause why he should

not be adjudged in contempt by reason of the facts so certified.

IT IS SO REPORTED at Tampa, Florida on October 12, 2012.

*Mark A. Pizzo*

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).

Copies furnished to:
Hon. James D. Whittemore
Counsel of Record

12