UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**

    **Petitioner,**

vs.                                        Case No. 8:11-mc-00099-JDW-MAP

**PAUL R. ST. JOHN,**

    **Respondent.**

_____/

## ORDER

**BEFORE THE COURT** is the Magistrate Judge's thorough Report and Recommendation (Dkt. 29), to which Respondent objects (Dkt. 30).[1] While the Magistrate Judge's patient handling of this matter and his reasoned conclusions are appreciated, in the end I cannot agree that Respondent waived his Fifth Amendment rights by failing to assert them until faced with the prospect of being held in contempt. It is undisputed that Respondent invoked the Fifth Amendment in first meeting with the Revenue Officer and each time thereafter. While Respondent's apparent selective invocation of the Fifth Amendment privilege is troublesome, the record does not support a finding of knowing and voluntary waiver. *See Emspak v. United States*, 349 U.S. 190, 196 (1955).

Upon consideration, the Report and Recommendation (Dkt. 29) is ADOPTED *in part*. The United States of America's Motion to Request the Issuance of an Order to Show Cause Why Respondent Should Not Be Held in Contempt, for a Contempt Hearing and for Sanctions (Dkt. 14) is GRANTED *in part* and DENIED *in part*.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

On April 21, 2011, the Internal Revenue Service ("IRS") served two summonses directing

---

[1] The United States did not file a response to Respondent's objections.

Paul R. St. John ("Respondent") to appear on May 5, 2011, before Revenue Officer Bonnie Ragghianti to give testimony and produce records and documents concerning Respondent's personal tax liability (Dkts. 1-4, 1-5). Respondent appeared, "failed"[2] to produce the requested documents, and asserted his Fifth Amendment right against self-incrimination as the reason for refusing to answer "most" of the questions (Dkt. 1-2 ¶ 5; Dkt. 30-3 at 20:22-24). The United States subsequently filed a petition to enforce the summonses (Dkt. 1), asserting that Respondent "is in possession and control of documents and records regarding his income tax liabilities," but has "refused" to comply with the summonses (*id.* at 2-3).

On September 27, 2011, the Magistrate Judge ordered Respondent to appear on November 17, 2011, to show cause why Respondent should not be compelled to comply with the summonses (Dkt. 2). The order specifically directed Respondent to file "any defense . . . or opposition to the petition" with the Clerk at least fourteen days prior to the show cause hearing and notified Respondent that failure to comply with the show cause order could subject him to contempt (Dkt. 2 ¶¶ 5, 8). The order also stated that "only those issues brought into controversy by the responsive pleadings and factual allegations supported by the affidavit will be considered." (*Id.* ¶ 6.) Respondent, acting *pro se*, filed two responses and a notice, none of which invoked or addressed the Fifth Amendment privilege (*see* Dkts. 4, 6, 7). Respondent appeared *pro se* at the November 17 enforcement hearing, where he refused to identify himself, did not deny that he possessed the summoned documents, and did not assert his Fifth Amendment privilege (*see* Dkt. 8).

The Magistrate Judge found that the United States had satisfied its burden under *United States v. Powell*, 379 U.S. 48, 57-58 (1964), and that none of Respondent's arguments at the

---

[2] Revenue Officer Ragghianti's declaration in support of the petition to enforce the summonses avers that Respondent "failed" to produce the requested documents, while the Government's Petition contends that Respondent "refused to comply with the summonses by refusing to produce" documents (Dkt. 1 at 3).

2

enforcement hearing had merit. Accordingly, the Magistrate Judge recommended that the Petition to enforce the summonses be granted (Dkt. 9). On December 1, 2011, the Report and Recommendation was adopted in full and Respondent was ordered to appear before Revenue Officer Ragghianti, failing which he would be subject to sanctions, including a citation for contempt of court (Dkt. 11).[3]

Pursuant to that order, Respondent appeared before Revenue Officer Ragghianti on January 25, 2012, and again invoked his Fifth Amendment privilege (Dkt. 14-1 at 1; Dkt. 30-3 at 21:18-20). The United States moved for, and the Magistrate Judge issued, an order directing Respondent to show cause why he should not be held in contempt for failing to comply with this Court's enforcement order (Dkts. 14, 16). In response to the show cause order, Respondent, still acting *pro se*, argued that a contempt hearing was premature because the Court had yet to evaluate whether Respondent's invocation of the Fifth Amendment was valid (Dkt. 18 at 2).

On July 9, 2012, Respondent appeared with counsel before the Magistrate Judge pursuant to the show cause order. At the hearing, the Assistant United States Attorney stated that the United States had no intent of pursuing criminal charges against Respondent for tax evasion or tax violations (Dkt. 30-1 at 6:12-25). Upon agreement by Respondent to appear before Revenue Officer Ragghianti once more, the Magistrate Judge continued the show cause hearing for 90 days on the following basis:

> Well, I think probably the better way to proceed in this case would be given the government's announcement that it does not intend and will not seek criminal enforcement or criminal action against the defendant for either tax evasion or any tax violations concerning the years in question per the summons, and given that the Fifth Amendment has to be addressed on a case-by-case basis, or a question-by-question basis, it seems prudent to

---

[3]Respondent did not appeal the enforcement order, even though it was appealable. *See Reisman v. Caplin*, 375 U.S. 440, 449 (1964).

> continue it, allow the defendant to produce.
>
> If there's some area of inquiry that a Fifth Amendment application is made or response is made objecting to a question on the Fifth Amendment, that – I take that up after the assertion of the Fifth Amendment.

(Dkt. 30-1 at 8:1-14).

As a result, Revenue Officer Ragghianti met with Respondent and his attorney on September 18, 2012. Once again, Respondent invoked his Fifth Amendment privilege in response to most of the questions concerning his income, employment, assets, and liabilities (see Dkt. 30-2). Respondent answered substantially more questions during this meeting with the Revenue Officer than he had at the first two meetings, but still maintained, on a question-by-question basis, that responding to certain questions would infringe on his Fifth Amendment rights (see id.).

The Magistrate Judge reconvened the show cause hearing on October 9, 2012. Revenue Officer Ragghianti testified that Respondent had invoked his Fifth Amendment privilege each time she met with him (Dkt. 30-3 at 21:11-23). She also testified that she could not guarantee that Respondent would not be prosecuted for failing to file a tax returns and that some of the documents she had requested could be used as evidence in a prosecution (Dkt. 30-3 at 23:8-16, 27:2-11). Based on these facts, Respondent argued through counsel that he never waived his Fifth Amendment privilege and that he was entitled to raise it, at the latest, in response to the order to show cause why he should not be held in contempt. Respondent requested an *Argomaniz*[4] hearing to evaluate his Fifth Amendment invocation.

The Magistrate Judge found that Respondent was making a "blanket" claim of Fifth

---

[4]*United States v. Argomaniz*, 925 F.2d 1349, 1355 (11th Cir. 1991) ("The district court must review Argomaniz' assertions of the privilege on a question-by-question basis. This will best be accomplished in an *in camera* proceeding wherein Argomaniz is given the opportunity to substantiate his claims of the privilege and the district court is able to consider the questions asked and the documents requested by the summons.").

4

Amendment privilege (Dkt. 30-3 at 41:8-13, 39:17-25), which obviated an individualized inquiry under *Argomaniz* (Dkt. 30-3 at 40:1-4). In his Report and Recommendation, the Magistrate Judge observed that Respondent had not invoked the Fifth Amendment during the enforcement hearing and did not deny that he possessed the documents sought by the summonses (Dkt. 29 at 3). The Magistrate Judge correctly found that Respondent did not present the Fifth Amendment privilege to the court until his response to the show cause (Dkt. 29 at 5). Finally, the Magistrate Judge found that the United States "has shown clearly and convincingly that the Respondent violated the Court's December 2, 2011, order," and that "Respondent introduced no evidence to explain why he could not comply; nor did he demonstrate that he acted in good faith or reasonably tried to comply with the Court's order" (Dkt. 29 at 9-10). Relying on *United States v. Rylander*, 460 U.S. 752 (1983), and *United States v. Kowalik*, 809 F.Supp. 1571 (S.D. Fla. 1992) (Marcus, J.), and distinguishing decisions from the Fourth and Ninth Circuits, the Magistrate Judge concluded that Respondent had waived his Fifth Amendment privilege by failing to raise it during the enforcement hearing and by failing to object to the resulting report and recommendation (Dkt. 29 at 10). Respondent objects to these findings and conclusions (Dkt. 30).

## II. DISCUSSION

The Fifth Amendment privilege against self-incrimination "protects a person . . . against being incriminated by his own compelled testimonial communications." *Fisher v. United States*, 425 U.S. 391, 409 (1976). It exists, in part, to "assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." *Maness v. Meyers*, 419 U.S. 449, 461 (1975). The privilege may be asserted "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory," *Kastigar v. United States*, 406 U.S. 441, 445 (1972), and it extends to the production of documents. *In re Grand Jury Subpoena Dated Apr.*

5

*9, 1996*, 87 F.3d 1198, 1200 (11th Cir. 1996) (citing *United States v. Doe*, 465 U.S. 605 (1984); *Fisher v. United States*, 425 U.S. 391 (1976)). "Accordingly, a taxpayer may invoke this privilege in response to requests for information in an IRS investigation." *Argomaniz*, 925 F.2d at 1353.

The Fifth Amendment privilege is not self-executing. *United States v. Pool*, 660 F.2d 547, 556 (5th Cir. Unit B Nov. 2, 1981). Rather, the privilege must be "'brought to the attention of the tribunal which must pass upon it,'" or it is waived. *Id.* (quoting *Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 113 (1927)). Once claimed, however, the privilege is guaranteed by the Constitution, and its waiver "is not lightly to be inferred." *Emspak v. United States*, 349 U.S. 190, 196 (1955) (quoting *Smith v. United States*, 337 U.S. 137, 150 (1949)). In evaluating whether the Fifth Amendment privilege has been waived, one must heed the Supreme Court's "oft-repeated admonition [to] 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" *Id.* at 198 (quoting *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

Distilled to its essence, the question presented by Respondent's objections is whether Respondent waived his Fifth Amendment privilege by waiting until the contempt proceeding to invoke it. The Magistrate Judge held that *Rylander* controls this question. *Rylander*, however, is inapposite. The issue in *Rylander* was whether Rylander had satisfied his burden of proving that he was, at the contempt stage, unable to comply with the enforcement order because he did not possess the summoned documents.[5] *Accord In re Grand Jury Subpoena*, 87 F.3d at 1202 n.3 ("[In *Rylander*], the Court held that where a claim of lack of possession is raised for the first time at a contempt hearing for failure to produce documents, the witness has the burden of proving a present inability

---

[5]In civil contempt proceedings, defendants may assert the defense of a "*present* inability to comply with" the enforcement order because they lack the requested documents. *Rylander*, 460 U.S. at 757 (citing *Maggio v. Zeitz*, 333 U.S. 56, 75-76 (1948); *Oriel v. Russell*, 278 U.S. 358, 366 (1929)) (emphasis in original). A defendant who raises this defense has the burden of production. *Id.* (citing *McPhaul v. United States*, 364 U.S. 372, 379 (1960); *Maggio*, 333 U.S. at 75-76; *Oriel*, 278 U.S. at 366; *United States v. Fleischman*, 339 U.S. 349, 362-63 (1950)).

to comply, even where this requires providing oral testimony."). The Supreme Court held that Rylander had "failed to introduce any evidence" of his lack of possession and therefore did not overcome his burden of demonstrating a present inability to comply. *Id.* at 758. Rylander's invocation of the Fifth Amendment, the Court held, was not a substitute for evidence of a present inability to comply. *Id.*[6]

The finding of contempt in *Rylander*, therefore, was based on Rylander's failure to provide evidence of an inability to comply with the summons at the time of the contempt proceedings. It was not based on a waiver of the Fifth Amendment. Respondent, in contrast, has never asserted the defense of present inability to comply with the summonses due to a lack of possession, and he is not utilizing the Fifth Amendment as a "sword"[7] to attempt to satisfy his burden of production at the contempt proceeding. Rather, he asserted the Fifth Amendment privilege as his only defense, and has done so in each meeting with the Revenue Officer.

While *Rylander* prohibits Respondent from raising lack of possession or inability to comply as a defense for the first time at a contempt proceeding, it does not preclude Respondent from invoking the Fifth Amendment privilege at that stage. *See United States v. Allee*, 888 F.2d 208, 213 (1st Cir. 1989) ("[W]e, like the Ninth Circuit, believe that, in such a case, this appellant is not barred

---

[6] Additionally, Rylander's summons requested corporate records, not personal documents. *Rylander*, 460 U.S. at 753. Under *Braswell v. United States*, 487 U.S. 99, 108-09 (1988), Rylander could not invoke the Fifth Amendment privilege to avoid producing the corporate records. *See also In re Grand Jury Subpoena Dated Apr. 9, 1996*, 87 F.3d 1198, 1200 (11th Cir. 1996) ("[I]t has long been clear that a custodian of corporate records may not claim a Fifth Amendment privilege to avoid producing documents."). Respondent's summonses, on the other hand, requested personal tax records, which are susceptible to assertions of the Fifth Amendment privilege. *See Argomaniz*, 925 F.2d at 1353.

[7] *See Rylander*, 460 U.S. at 758 ("But while the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness such as Rylander declies to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production. We think the view of the Court of Appeals would convert the privilege from a shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his.").

from raising a defense of privilege in the subsequent contempt proceedings."); *United States v. Sharp*, 920 F.2d 1167, 1170 (4th Cir. 1990) (*Rylander* does not prevent a taxpayer from relying on the Fifth Amendment during a contempt hearing because he failed to assert the privilege "in a technically proper form while unrepresented by counsel."); *United States v. Rendahl*, 746 F.2d 553, 555 (9th Cir. 1984) (A defendant is not barred from claiming a Fifth Amendment privilege during a contempt hearing because of his failure to raise the claim at an enforcement hearing.); *United States v. Drollinger*, 80 F.3d 389 (9th Cir. 1996) (same).

In *Sharp*, the Fourth Circuit reversed the district court's order refusing to consider Sharp's Fifth Amendment privilege after he failed to raise it during the enforcement hearing. 920 F.2d at 1170. Acting *pro se*, Sharp refused to answer questions during the enforcement hearing and subsequent meetings with the IRS. *Id.* at 1169. After he was appointed counsel for the contempt hearing, however, Sharp raised his Fifth Amendment privilege for the first time. *Id.* The Fourth Circuit held that Sharp properly invoked the privilege as a defense to the summons. *Id.* at 1170. The court distinguished *Rylander*, holding that "[r]es judicata does not operate inexorably, and it should not operate here to deprive a litigant of a fundamental constitutional right because of his failure to assert it in technically proper form while unrepresented by counsel." *Id.* at 1170.

In *Rendahl*, the Ninth Circuit agreed that res judicata does not operate to waive the Fifth Amendment privilege at the contempt stage because the privilege "could not have been properly litigated in the enforcement hearing." *Rendahl*, 746 F.2d at 555.

Sharp's *pro se* status was a significant consideration for the Fourth Circuit. Likewise, the Second and Sixth Circuits have expressed concern over the ability of *pro se* litigants to preserve their Fifth Amendment rights in IRS enforcement proceedings. *See United States v. Edgerton*, 734 F.2d 913, 922 (2d Cir. 1984) ("Particularly in view of appellant's pro se status, we wish to emphasize the

limited scope of our decision. Appellant was held in contempt for claiming privilege pursuant to the Fifth Amendment [privilege] not to answer certain questions posed by the court regarding the existence and whereabouts of certain tax records of appellant. This was error."); *United States v. Grable*, 98 F.3d 251, 254-55 (6th Cir. 1996) (*Sharp* "appears to have been based, in part at least, on the fact that the taxpayer was unrepresented by counsel and thus presented the defense in a form that was not technically proper. We agree that this is an important factor in determining whether a party has forfeited a constitutional privilege."). In *Grable*, the Sixth Circuit held that the district court "should have conducted an inquiry to determine the validity of his claims of privilege" at the contempt hearing, even though Grable did not appear at the enforcement hearing and had not previously invoked the Fifth Amendment. 98 F.3d at 257.

Respondent's circumstances are more similar to those in *Sharp* and *Grable* than those in *Rylander*. In fact, Respondent has been more forthcoming in his invocation of the Fifth Amendment privilege than Sharp or Grable, who never mentioned the privilege until their contempt proceedings. Respondent, on the other hand, has invoked the privilege at each meeting with the Revenue Officer.

Under *Sharp*, *Rendahl*, *Drollinger*, *Grable*, and *Edgerton*, a *pro se* respondent may invoke the Fifth Amendment as late as the contempt hearing, even after failing to do so during enforcement proceedings. Those decisions are persuasive. Respondent's failure to assert the privilege before the Magistrate Judge did not waive the privilege he claimed during his meetings with the Revenue Officer, a result consistent with indulging every reasonable presumption against waiver of fundamental constitutional rights, including the right against self-incrimination. *Johnson*, 504 U.S. 458.[8] Accordingly,

---

[8] The Magistrate Judge also cites *United States v. Kowalik*, 809 F.Supp. 1571 (S.D. Fla. 1992), as support for a finding of contempt. *Kowalik*, however, is factually distinguishable. In *Kowalik*, then District Judge Marcus held that the respondent could not invoke the Fifth Amendment privilege against self-incrimination for the first time

9

1) The Report and Recommendation (Dkt. 29) is APPROVED *in part*.

2) The United States of America's Motion to Request the Issuance of an Order to Show Cause Why Respondent Should Not Be Held in Contempt, for a Contempt Hearing and for Sanctions (Dkt. 14) is GRANTED *in part* and DENIED *in part*.

3) Respondent Paul R. St. John is ordered to appear in person at a date and time to be set by the Magistrate Judge to SHOW CAUSE why he should not be held in contempt for failing to comply with the Court's enforcement order (Dkt. 11).

4) At the show cause hearing, the Magistrate Judge shall conduct an *Argomaniz* inquiry and evaluate the propriety of Respondent's invocation of the Fifth Amendment privilege as to each question asked on September 18, 2012, and as to each document summoned. The Magistrate Judge shall detail his factual findings and legal conclusions, including whether Respondent should be help in contempt, in a REPORT AND RECOMMENDATION.

5) Respondent is cautioned that any failure to comply with this order, including a failure to answer questions or produce documents during *in camera* review during the *Argomaniz* hearing, may result in a finding of contempt.

8) The Government's request for sanctions is DENIED.

**DONE AND ORDERED** this 31st day of January, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

during the *purgation* stage of contempt proceedings. *Id.* at 1577-78. This case has not yet reached that point. Indeed, Judge Marcus acknowledged that "[i]f the Fifth Amendment privilege were to be raised at all in this summons enforcement action, the prescribed exchange must occur at the latest, at the meeting seeking compliance with the enforcement hearing." *Id.* at 1577.